UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No. 05-80403

DAVID WILLIAMS,

    Defendant.
                                         /

**ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE**

Pending before the court are two motions filed by Defendant David Williams on June 3, 2005, a "Motion to Suppress Evidence" ("Defendant's Probable Cause Motion") and a "Motion to Suppress Evidence for Violation of 18 U.S.C. 3109 and Fourth Amendment" ("Defendant's Knock and Announce Motion"). The court held a hearing on Defendant's Knock and Announce Motion on July 13, 2005. During the hearing, the court ordered the parties to submit supplemental briefing relating to Defendant's motion no later than August 8, 2005. On August 5, 2005, the government filed its supplemental brief and on August 8, 2005 Defendant filed his supplemental brief. For the reasons stated below, the court will deny both motions.

**I. BACKGROUND**

Defendant was charged pursuant to 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Controlled Substance) and 18 U.S.C. § 924(c)(1)(B)(i) (Possession of a Short Barreled Shotgun in Furtherance of Drug Trafficking Crime). Defendant's motions challenge the issuance of a July 23, 2004 search warrant for an apartment

located at 4900 Tarnow in Detroit, Michigan and its execution by officers of the Detroit Police Department.

On July 23, 2004, Detroit Police Officer Darryl Stewart sought and obtained a search warrant with a search warrant application that alleged the following relevant facts, among others:

- Defendant resided at 4900 Tarnow, upper level, in Detroit, Michigan;
- Defendant possessed two firearms, a pinked handled .25 caliber handgun and a .45 caliber handgun;
- One month prior, Defendant used a .45 caliber handgun to rob five pounds of marijuana from a "Mexican dope dealer;"
- Defendant was arrested on June 26, 2004, for carrying a concealed weapon; and
- Defendant was recently arrested for possession of a stolen motor vehicle where a gun was found in the vehicle.

(*See* Affidavit at 1.)

The information in the search warrant application was gathered primarily through identified informants and Officer Stewart's own corroborative investigation. (*See id.*) On July 12, 2004, the Firearm Investigative Team ("FIT") had executed a search warrant at 5950 Hedwig, in Detroit, Michigan, and seized several handguns. (*Id.* at 1.) Based on the information obtained during that search, FIT executed a search warrant for 5409 Springwells (also in Detroit). (*Id.*) Detroit officers obtained information from Jose Cosme, who resides at both locations, and his mother, Stella Reinoso, while executing the search of 5409 Springwells in Detroit, Michigan. (*Id.*) Cosme and Reinoso both informed officers that Defendant Williams, who was also known to them as "D-Bird," lived on Tarnow between Michigan Avenue and the I-94 service drive, drove a silver Monte Carlo and possessed two firearms, a .25 caliber and .45 caliber handgun. (*Id.*) Cosme told police that "D-Bird" had robbed a drug trafficker of five

2

pounds of marijuana one month earlier.  (*Id.*)

On July 16, 2004, police arrested and interviewed Kamico Jackson, a known associate of Cosme and "D-Bird."  (*Id.*)  Jackson identified "D-Bird" as David Williams and showed the police where Williams lived (upper unit of 4900 Tarnow, located between Michigan Avenue and I-94 service drive), thereby corroborating the information provided by Cosme and his mother.  (*Id.*)  Jackson stated that he had seen Defendant in possession of .25 caliber and .45 caliber handguns, that Defendant drove a silver Monte Carlo, and that Defendant had robbed a drug trafficker of marijuana at gun point a month earlier.  (*See id.*)  Jackson also stated that Defendant had recently been arrested for being in possession of a stolen motor vehicle and had a gun in the car at the time.  (*Id.*)  Officer Stewart conducted numerous interviews to ascertain that the aforementioned witnesses were truthful.  (*See Id.*)

On July 17, 2004, Officer Stewart surveyed the scene at 4900 Tarnow and observed a man matching the description of "D-Bird" standing next to a silver Monte Carlo in front of the location.  (*See Id.*)  Following these observations, Officer Stewart searched the Detroit Police Department Database for "David Williams" and found a photograph which matched the description of "D-Bird" and the man Officer Stewart saw next to the silver Monte Carlo on 4900 Tarnow.  (*Id.*)  The database also revealed that Williams had been arrested for carrying a concealed weapon on June 26, 2004, and the license plate number for the silver Monte Carlo matched the address Williams used when he was arrested for this offense.  (*Id.*)  Based on this information, Officer Stewart obtained a search warrant for the entire premises of 4900 Tarnow, upper level. The

premises was described as "a white two story, two family house. . ." and "the door to be accessed [for the search was]. . . the south back door." (*Id.*)

The facts surrounding the execution of the search warrant are contested. Defendant alleges that "[o]fficers approached the rear of the home, proceeded up one flight of stairs and immediately entered the home without knocking and/or announcing their presence and purpose." (Def.'s Knock and Announce Mot. at 1.) The Government, however, responded that:

> The apartment to be searched was located on the second floor of the building. The stairs to the second story are on the outside of the building. Officers climbed the stairs and encountered an open door upon reaching the second floor. David Williams was seated at a table just a few feet from the door in plain view of the officers, he appeared to be using a razor blade to cut up and package crack cocaine. Officers paused before entering and announced their purpose in clear and loud voices.

(Gov't's Resp. to Knock and Announce Mot. at 1-2.)

At the motion hearing, it became clear that the officers announced their presence at approximately the same time they entered 4900 Tarnow through an open outside back door that lead into a common hallway shared with other residents. (*See* Hr'g Tr. at 81-82.) The officers then proceeded up a common stairwell to the Defendant's upper level flat, where through the open door which led into the flat they encountered the Defendant cutting up crack cocaine. (*See id.*) The officers called out something to the effect of "police, get down," and then entered through the open door of the unit to conduct their search. (*See id.*)

## II. Defendant's Probable Cause Motion

Defendant argues that the affidavit provided by Officer Stewart to the magistrate lacked a substantial basis from which to conclude that probable cause existed for the search. (Def.'s Probable Cause Mot. at 4.) Defendant argues that the affidavit was only "bare bones" and that a reasonable officer would have known that the search was illegal despite the magistrate's authorization. (*Id.* at 6.)

The Government responds arguing that the facts shown in the affidavit, when viewed under the "totality of circumstances," provide a substantial basis for probable cause that Defendant possessed a firearm at 4900 Tarnow involved in multiple crimes. (*See* Gov.'s Resp. to Probable Cause Mot. at 7.)

### A. Probable Cause

Probable cause must exist in order for a search warrant of a home to issue. U.S. Const. amend. IV ("No [w]arrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be seized."); *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). Review of the sufficiency of an affidavit underlying a search warrant follows the principles laid down by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983). *See United States v. Allen*, 211 F.3d 970, 972 (6th Cir. 2000). In *Gates*, the court rejected the rigid tests previously applied in several federal circuits in favor of a "totality of the circumstances approach." *Gates*, 462 U.S. at 230–31. The court must weigh all of the evidence presented in the affidavit in each case to resolve the "commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.* at 230. Additionally, the totality of the circumstances standard requires the court to assess the

5

adequacy of the affidavit on "what [it] does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975.

*Gates* also provides guidance for lower courts with regard to the deference accorded to a magistrate's determination of probable cause.  "[R]eviewing courts are to accord the magistrate's determination 'great deference.'" *Id.* at 973 (citing *Gates*, 462 U.S. at 236.)  Reflecting a strong preference for the pre-screening function of the warrant process, "the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* (citations omitted).  Deference to the magistrate's determination is not boundless, as the Sixth Circuit "has long held that an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *Id.* (citing *United States v. Swihart,* 554 F.2d 264, 267-68 (6th Cir. 1977)).  A magistrate's determination based on a "bare bones" affidavit constitutes an arbitrary exercise of discretion and fails to meet the requirements of the Fourth Amendment.  *See U.S. v. Weaver*, 99 F.3d 1372, 1377-78 (6th Cir. 1998).   In sum, the court must review the affidavit presented to the magistrate to determine if a substantial basis exists for his probable cause determination.  *See Helton*, 314 F.3d at 819.

It is also well established that a magistrate can rely on hearsay evidence in making the probable cause determination.  *Allen,* 211 F.3d at 973; *Helton*, 314 F.3d at 819 (citing *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) and *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996)).  When confronted with hearsay information from a confidential informant or an anonymous tipster, the court should consider three

factors in giving the information provided its due weight within the totality of the circumstances inquiry: (1) the veracity of the tipster; (2) the reliability of the tip and tipster; and (3) the tipster's basis of knowledge.  See Helton, 314 F.3d at 819.  These three factors, however, should not be applied rigidly as a test, but should be considered in weighing all of the circumstances.  Allen, 211 F.3d at 975 ("As the Court observed in Gates, tests and prongs have an unfortunate tendency to develop a life of their own, and tend to draw more attention to their individual characteristics than to the totality of the circumstances.").  Although these three factors are applied to anonymous and confidential tips, the court's main inquiry in examining probable cause centers on the totality of all circumstances in each individual case.  "Probable cause is a fluid concept-- turning on the assessment of probabilities in particular factual contexts."  Gates, 462 U.S. at 232.

As an initial matter, the court rejects Defendant's off-point argument that the search warrant is invalid because the "affidavit contains no allegation or information that Williams was a felon or was otherwise prohibited from possessing or keeping firearms in the home."  (Def.'s Probable Cause Mot. at 4.)  Defendant provides no authority, and the court knows of none, for the implied assertion that a search warrant application must contain probable cause for the specific crime under which a defendant will eventually be charged.  This aspect of Defendant's argument is irrelevant.

According to statements from Cosme and others, Defendant removed two firearms from 5409 Springwells and 5950 Hedwig just before the searches of these properties.  (Gov't's Resp. to Def.'s Probable Cause Mot. at 4.)  In addition, the search of 5950 Hedwig resulted in the seizure of several handguns which were evidence of a

crime. Based on other statements from Cosme, as corroborated by Jackson, Defendant had used a firearm (specifically a .45) to rob a drug trafficker of marijuana.

In *Gates*, 462 U.S. at 230, the Court said that

> "[V]eracity," "reliability," and "basis of knowledge" should be understood simply as closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Not only did the information from different sources interlock and provide support, Officer Stewart's discovery that Defendant had been arrested less than one month before for carrying a concealed weapon added further credibility to Cosme and Jackson's information. The court finds that, under the "totality of the circumstances," probable cause existed to believe that Defendant was in possession of one or more firearms and that a crime or crimes had been committed in connection therewith. The warrant application provided a substantial basis for the magistrate to so determine.

Finally, contrary to Defendant's contention, there is a sufficient nexus between 4900 Tarnow, upper level, and the firearms sought. Although the warrant application failed to identify specific information regarding the whereabouts of Defendant's firearms, there is ample evidence that Defendant was in possession of firearms and that Defendant resided at 4900 Tarnow. Cosme and Reinoso both stated that Defendant lived on Tarnow between Michigan Avenue and I-94 service drive and drove a silver Monte Carlo, which was corroborated and subsequently identified specifically by Jackson. (*See* Def.'s Probable Cause Mot. at Ex. A.) Officer Stewart further corroborated this information when he witnessed a man who matched Defendant's

description at 4900 Tarnow outside a silver Monte Carlo and who matched the photograph of David Williams on the police database.

A connection between the place to be searched and the items to be seized may be established by the nature of the items and normal inferences as to where a person would keep such items. *United States v. Rosenbarger,* 536 F.2d 715, 719 (6th Cir. 1976). For example, it is reasonable to infer that drug dealers are likely to keep drugs in their homes. *United States v. Davidson,* 936 F.2d 856, 860 (6th Cir. 1991); *United States v. Missouri*, 644 F. Supp. 108, 111 (E.D. Mich. 1986). Also, if probable cause exists to believe that a person has committed a crime, a court may reasonably conclude that evidence of the crime may be hidden in his home. *United States v. Martinez*, 1997 WL 26461, at *2 (6th Cir. 1997) (citing *United States v. Jones,* 994 F.2d 1051, 1055-56 (3d Cir. 1993)).

The court finds that the warrant application provided a substantial basis for the magistrate to determine that probable cause existed that Defendant resided at 4900 Tarnow and that Defendant at this location possessed firearms in connection with the commission of crimes including armed robbery and drug distribution.

### B. *Leon's* Good Faith Exception

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that the exclusionary rule will not apply when such evidence was discovered pursuant to a search warrant executed by police officers in good faith. *Id.* at 922. The good faith exception to the exclusionary rule rests on the rationale that its application in such cases would not further the deterrent purpose that lies behind the exclusionary rule. *See id.* at 915-18.

The Court has acknowledged four exceptional circumstances when the *Leon* good faith rule does not apply. The rule does not apply when:

> (1) the supporting affidavit contains information the affiant knew or should have known was false;
> (2) the issuing magistrate lacked neutrality and detachment;
> (3) the affidavit is devoid of information that would support a probable cause determination making belief that probable cause exists completely unreasonable; or
> (4) the warrant is facially deficient.

*Helton*, 314 F.3d at 823-24 (citing *Leon*, 468 U.S. at 905, 914-15, 922-23.)

Under any of these four circumstances, evidence is subject to suppression even if the police obtained a search warrant. The good faith inquiry is an objective one and the inquiry related to the third exception is limited "to the objectively ascertainable question [of] whether a reasonably well trained officer would have known the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 923 n.23.

Under these standards, the court finds that even if the magistrate had lacked a substantial basis to determine that probable cause for the search warrant existed, suppression of the evidence obtained during the July 23, 2004 search of 4900 Tarnow would not be required because the *Leon* good faith exception would apply under these circumstances.

Here, Officer Stewart sought and obtained a warrant that was issued by a neutral and detached magistrate. The police officers executed the search warrant and obtained evidence during their search. The remaining issue for the court's good faith analysis is determining whether any of the four specific exceptions to the *Leon* good faith rule apply in this case.

Defendant focuses on the third *Leon* exception and argues that the affidavit is devoid of information that would support a probable cause determination, such that the officer executing a search warrant has "no reasonable grounds for believing that the warrant was properly issued."  *Leon*, 468 U.S. at 923; *Helton*, 314 F.3d 824.  (Def.'s Probable Cause Mot. at 9.)

An officer has no reasonable grounds for relying on a warrant issued in response to a "bare bones" affidavit, *see* e.g., *United States v. Weaver*, 99 F.3d 1372, 1377-78 (6th Cir. 1996), which the Sixth Circuit has defined as one that "states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge."  *Id.* at 1378.  "A 'bare bones' affidavit is similar to, if not the same as, a conclusory affidavit."  *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000).  It is one "which states 'only the affiant's belief that probable cause existed.'"  *Id.* (quoting *United States v. Finch*, 998 F.2d 349, 353 (6th Cir. 1993).  An example of a "bare bones" affidavit is found in *Gates*, 462 U.S. at 239.  The *Gates* Court stated "[a] sworn statement of an affiant that 'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises will not do."  *Id.* (citing *Nathanson v. United States*, 290 U.S. 41 (1933)).  In *Weaver*, the Sixth Circuit held that an affidavit was "bare bones" when it lacked particularized incriminating facts and used conclusory statements as well as boilerplate language.  *Weaver*, 99 F.3d at 1377-78.  The *Weaver* court stated:

> It is imperative that affidavits accurately reflect the facts of the particular situation at hand.  The use of generalized boilerplate recitations designed to meet all law enforcement needs for illustrating certain types of criminal conduct engenders the risk that insufficient "particularized facts" about the case or the suspect will be presented for a magistrate to determine

11

probable cause.

*Id.* at 1378 (citations omitted).

Officer Stewart's affidavit was not "bare bones." Any reasonably well-trained officer could rely on the warrant issued by the magistrate in this case. The affidavit before the court is not generalized boilerplate and does not simply adopt the conclusion of an anonymous tipster. Instead, the affidavit in question provides corroborated statements from three named witnesses, interviewed to determine their reliability, concerning the Defendant's residence, the description of the automobile he ordinarily drove, and his possession of firearms. Furthermore, two of the witnesses corroborated each other, separately, that Defendant used a firearm in a robbery; one stated that Defendant had removed handguns from residences under criminal investigation before other handguns were seized at one of those locations. Moreover, the affidavit contains information that Officer Stewart conducted his own investigation at 4900 Tarnow where he observed the Defendant outside the home, and an investigation into police department records. A reasonable officer would recognize these facts as giving rise to a reasonable inference that Defendant resided at this location. *See United States v. Van Shutters*, 163 F.3d 331, 337–38 (applying *Leon* good faith exception when affidavit did not explicitly state a nexus between the place to be searched and evidence to be seized). Thus, a reasonable, well-trained officer could conclude that Officer Stewart's surveillance corroborated the informants' tips and could be used in determining probable cause.

In short, the executing officers were entitled to rely on the magistrate's

determination regarding probable cause in this case since the affidavit was not "so lacking" as to constitute a "bare bones" affidavit. Accordingly, even if the magistrate lacked a substantial basis for his probable cause determination, the good faith rule would bar the suppression of the evidence recovered during the July 23, 2004 search of the premises.

The court will deny "Defendant's Motion to Suppress Evidence" obtained during the July 23, 2004 search of 4900 Tarnow, upper level, in Detroit, Michigan.

### III. Defendant's Knock and Announce Motion

Section 3109 of title 18 of the United States Code is commonly known as the "knock and announce" statute. This statute provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after *notice of his authority and purpose*, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109 (emphasis added).

This *federal* law applies to the execution of *federal* search warrants, and has no application to this case. *United States v. Gatewood,* 60 F.3d 248, 249 (6th Cir. 1995). It does not apply to the execution of a state warrant by state officers regardless of whether a federal officer participates in that search and/or the evidence is later offered in a federal case. *Id.; United States v. Heacock,* 31 F.3d 249, 258 (5th Cir.1994); *see also U.S. v. Johnson* 2000 WL 712385, *4 (6th Cir. 2000).

In any event, the inquiry pursuant to a §3109 analysis is similar to the reasonableness inquiry required by the Fourth Amendment. *United States v. Spikes,*

13

158 F.3d 913, 926 (6th Cir.1998).  Section 3109 requires that law enforcement officers cannot force an entry into a residence unless and until they are refused admittance.  *See United States v. Di Stefano*, 555 F.2d 1094 (2d Cir. 1977); *See also United States v. McClard*, 333 F. Supp. 158 (E.D. Ark. 1971), aff'd, 462 F.2d 488 (8th Cir. 1972) (describing the concept of "force" extends to the opening of closed doors that are unlocked).  The purpose of this section is to protect the privacy of occupants, prevent destruction of property, and protect federal law enforcement officers that may be mistaken as intruders as they are forcing their way inside.  *See Bonner v. Anderson*, 81 F.3d 472 (4th Cir. 1996); *United States v. Remigio*, 767 F.2d 730 (10th Cir. 1985).  In order to advance these goals, "[a]n integral part of the knock-and-announce rule is the requirement that officers wait a 'reasonable' period of time after a knock before physically forcing their way into a residence."  *See United States v. Dice*, 200 F.3d 978, 983 (citing *United States v. Finch*, 998 F.2d 349, 354 (6th Cir. 1993)); *United States v. Pelayo-Landero*, 285 F.3d 491, 498 (6th Cir. 2002) (stating that "officers must wait a 'reasonable period of time' after a knock and announce before physically entering a residence").  Failure to comply in substance with "knock and announce" requirements ordinarily results in the suppression of the evidence seized.  *See generally Miller v. United States*, 357 U.S. 301 (1958); *Ker v. California*, 374 U.S. 23 (1963); *United States v. Nabors*, 901 F.2d 1351 (6th Cir. 1996).

There are several exceptions to the "knock and announce" requirement.  An officer's failure to "knock and announce" his presence before entering a dwelling will be excused if exigent circumstances exist to justify entry.  *See United States v. Soria*, 965

14

F.2d 436 (7th Cir. 1992). For example, "no knock" entry is appropriate when "the police . . . have a reasonable suspicion that "knocking and announcing" their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997).

The prevailing view in most federal circuits is that entry through open doors by law enforcement agents executing a search warrant does not implicate the "knock and announce" statute. *See United States v. Gatewood*, 60 F.3d 248, 250 (6th Cir. 1995); *United States v. Salter*, 815 F.2d 1150, 1152 (7th Cir. 1987); *United States v. Remigio*, 767 F.2d 730 (10th Cir. 1985); *United States v. Phillips*, 149 F.3d 1026, 1029 (9th Cir. 1998) (holding the statutory "knock and announce" requirement does not apply to officers who enter through open doors). By extension, if the statutory requirement of knocking and announcing is not implicated by an entry through an open door, the Fourth Amendment's reasonableness requirement would not be offended by doing so.

This would be true principally because there can be no "forcible" entry when the doors to a dwelling are already open to the world. *See, e.g., Salter*, 815 F.2d at 1152 (entering a dwelling by pushing a partially opened door did not constitute force); *Wingrove v. Forshey*, 230 F. Supp.2d 808, 821 (S.D. Ohio 2002).

The court finds that the officers executing the search of 4900 Tarnow entered Defendant's dwelling through open doors; first, through an open outside back door (at the threshold of which they called out with no response, effectively announcing their presence and purpose) and second through an open inside upper-level door. Based on

15

these determinations, the officers did not "forcibly" enter 4900 Tarnow, and the "knock and announce" statute cannot be implicated in the search.

Defendant argues in a supplementary brief that there were no exigent circumstances to justify a rapid entry and that there is no evidence that to knock and wait would have been futile. "Indeed," Defendant argues, "the occupants were in visual contact with the officers and available for a response to the exercise of authority." (Def.'s Suppl. Br. at 4). The court wonders what Defendant would have officers do in the circumstances they encountered here. Both the screen door and the prime door to the upstairs apartment stood wide open at the top of the stairs. The officers arrived and from the threshold saw Defendant sitting a few feet inside. Apparently, Defendant argues that the officers should have held their ground there, knocked on the door jamb (in *addition* to alerting Defendant to their presence verbally, as the court finds they did). What might Defendant say should follow a knock at the threshold of an open door with Defendant sitting there looking at the officer? Would Defendant have the officer pause? For how long? For what purpose? Perhaps Defendant would argue that he needs an opportunity to refuse entry, although the court notes that the officers possessed a judicially-sanctioned warrant that gave them legal cause to enter *by force* if necessary. Or, possibly Defendant would argue that the absence of a knock deprived him of his right to flee, a chance to discard evidence or to retrieve one of his weapons. Again, Defendant contends that the officers should have knocked, but does not say what should have happened thereafter, or to what purpose, and the court cannot guess. The court can, however, observe that there is one age-old purpose served by a knock at a

*closed* door: it is to summon someone so that the door may be *opened*. The court finds that to knock at an already-open door is to do no more than to announce one's presence, and that such a purpose had been served in this case by the loud verbal announcements coupled with the eye-to-eye meeting that had already occurred. The Fourth Amendment does not require that the form of a statutory prescription be elevated over the substance of an encounter that serves every legitimate purpose of that statute in order for a search such as this to be deemed "reasonable."

Thus, even if the "knock and announce" statute were held to apply to these facts, and even if it were factually implicated in the search, the court would find that it was not violated. At the time of the search, the officers believed that Defendant possessed a firearm and used it to rob a drug dealer of a distributable quantity of marijuana. Furthermore, the officers had knowledge that Defendant had recently been arrested for carrying a concealed weapon. This information presented the officers with a reasonable suspicion that Defendant was armed and dangerous and failure to *strictly* comply with ordinary "knock and announce" requirements was justified under these circumstances. Officer Johnson testified to this effect at the hearing when he stated a safety concern. (*See* Hr'g Tr. at 7; *See also id.* at 30 (referring to the danger that a "fatal funnel" (a closed stairway) presents an entering officer: "It's the worst place to be making an entry.")) The Officers did not violate either the federal "knock and announce" statute or the Fourth Amendment's requirement of a reasonableness in their entry to execute the search warrant. Defendant's Knock and Announce Motion is denied.

### IV. CONCLUSION

IT IS ORDERED that "Defendant's Williams' Motion to Suppress Evidence" [Dkt. # 12] and "Defendant Williams' Motion to Suppress Evidence for Violation of 18 U.S.C. 3109 and Fourth Amendment" [Dkt. # 13] are DENIED.

      S/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated:  August 31, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 31, 2005, by electronic and/or ordinary mail.

      S/Lisa G. Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522

S:\DEM\OpinionsandOrders\05-80403.WILLIAMS.DenyingMotionToSuppress.2.wpd